In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 06-2037, 06-2038 & 06-2175

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES FIFE and KAREN KRAHN,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 04 CR 60—**James T. Moody**, *Judge.*

ARGUED SEPTEMBER 25, 2006—DECIDED DECEMBER 12, 2006

Before BAUER, KANNE and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* James Fife pled guilty to four counts of willfully making and subscribing a false income tax return in violation of 26 U.S.C. § 7206(1). Karen Krahn, Fife's wife, pled guilty to one count of willfully aiding and assisting in the preparation and presentation of a false income tax return in violation of 26 U.S.C. § 7206(2). In calculating Fife's advisory Sentencing Guidelines range, the district court imposed a two-point increase in offense level for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3, and a two-point increase for the use of sophisticated means pursuant to U.S.S.G. § 2T1.1(b)(2). For Krahn, the district court also imposed

the two-point increase for the use of sophisticated means pursuant to U.S.S.G. § 2T1.1(b)(2). Fife and Krahn were sentenced to forty-six and twenty-four months respectively; they now appeal the imposition of their sentences. Finding no error in the district court's sentencing determination, we affirm.

## I. BACKGROUND

Fife, a lawyer, served as the special assistant to the mayor of East Chicago, Indiana from the mid-1990's until 2003. In this capacity, Fife was responsible for consulting on matters pertaining to finance, budget, taxation, personnel, and legislation, lobbying the Indiana General Assembly, representing the city on matters involving riverboat gambling, and acting as a liaison between the city and other federal, state and local government agencies. Fife had no immediate supervisor, and was afforded broad discretion in performing his duties for the city. The city provided Fife with a handsome salary, health benefits, a city credit card, office supplies and equipment, secretarial staff, telephone, transportation, and agreed to indemnify and defend Fife in any action arising from or in connection to his services for the city.

In the late 1990's, Fife created four Indiana corporations: Midwest Government Associates, Corporation for Project Development and Consulting, Project Development Enterprises, and Seracon Corporation. On paper, Fife's sister, Janice Miksich, served in varying capacities for each of these corporations, including incorporator, president and secretary, or director and registered agent. In reality, Miksich had no involvement with these corporations outside of signing the incorporation documents. Miksich's home address was used as the registered office for two of the corporations, and the other two were simply registered to post office boxes. Fife's corporations

did not have physical offices, nor did they maintain accounting journals. The sole client of these four corporations was the city of East Chicago and its related entities. None of Fife's corporations filed tax returns with the IRS, and Fife did not individually claim the more than $700,000 paid to the corporations. In short, the corporations were merely shells, used to conceal the large fees Fife was reaping from his dealings with the city.

Krahn joined the scheme in 1997, incorporating KLK Enterprises and listing herself as the owner. Krahn, who had other full-time employment, was the only employee of KLK and there is no evidence that the corporation ever incurred any legitimate business expenses nor did KLK file tax returns. Krahn and Fife contend that KLK provided office supplies to Fife's corporations, even though the city provided office supplies to Fife. Meanwhile, Fife's corporations entered into contracts with the city for services identical to those which Fife was personally providing to the city. Thus, Fife was paid twice for these services. Finally, a sixth corporation, the C Corporation owned by Gregory Cvitkovich, became involved when bribes were paid to Fife and KLK in exchange for a sludge removal contract with the city. Fife and Krahn both used the money that was funneled through their five corporations for personal use.

In late 2001, Fife hired the accounting firm of Weichman & Associates to prepare his and Krahn's 2000 and 2001 joint tax returns, and Fife's 1998 and 1999 individual returns which he had previously failed to file. Fife did not disclose the existence of any of the corporations to the accountants. The accountants were unaware of the corporations until 2003, when they received a federal grand jury subpoena requesting books and records for Fife's four corporations, at which time the accountants began creating accounting journals for the entities. The journals were composed based upon incomplete bank statements,

check registers, deposit slips, and canceled checks, with the accountants relying on Fife's explanations for the expenses. The district court found that from 1998 to 2001, Fife failed to report $892,509 in taxable income, resulting in a tax loss of $384,840. Krahn was responsible for a tax loss of $242,569 for her false joint returns with Fife, and for diverting $164,000 of Fife's income through her and KLK's bank accounts in 1998 and 1999.

At sentencing, Fife conceded that his base offense level was eighteen, based on a tax loss of between $200,000 and $400,000 pursuant to U.S.S.G. § 2T1.1(a)(1) and the U.S.S.G. § 2T4.1 Tax Table. An additional two points were added for failing to report income in excess of $10,000 gained by criminal activity, which in this case was a violation of Indiana's conflict of interest laws. The district court further found that Fife had abused a position of trust as special assistant to the mayor of East Chicago by using his broad discretionary power to funnel lucrative contracts to his shell corporations, the fruits of which he concealed from the IRS. This finding yielded a two-point increase pursuant to U.S.S.G. § 3B1.3. Additionally, the district court added two more points pursuant to U.S.S.G. § 2T1.1(b)(2), finding that Fife's use of shell corporations and concealment from his accountants warranted a sophisticated means enhancement. With a three-point reduction for acceptance of responsibility, Fife's total offense level was twenty-one. Combined with a criminal history category of I, Fife's advisory Sentencing Guidelines range was thirty-seven to forty-six months. Given the duration, complexity, and public nature of Fife's acts, the district court imposed a sentence at the top of the guide-lines range: forty-six months.

Krahn's base offense level was likewise eighteen. She received a two-point enhancement for the use of sophisti-cated means pursuant to U.S.S.G. § 2T1.1(b)(2), and a three-point reduction for acceptance of responsibility.

Krahn's total offense level was thus seventeen; and, with a criminal history category of I, her advisory guidelines range was twenty-four to thirty months. Given the level and nature of Krahn's involvement in the crimes, the district court imposed a sentence at the bottom of the advisory guidelines range: twenty-four months.

## II. ANALYSIS

On appeal, Fife challenges his two-point increase for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. Both Fife and Krahn challenge their two-point increases for the use of sophisticated means pursuant to U.S.S.G. § 2T1.1(b)(2). We review the district court's interpretation and application of the Sentencing Guidelines *de novo*, and its findings of fact for clear error. *United States v. Ellis*, 440 F.3d 434, 436 (7th Cir. 2006) (citing *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005)); *United States v. Baldwin*, 414 F.3d 791, 798 (7th Cir. 2005) (discussing sentencing review post-*Booker*).

### A. Abuse of Position of Trust

A two-point increase in the Sentencing Guidelines offense level is indicated where the defendant has "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "This court employs a two-part test to determine whether the abuse of trust guideline is appropriate under a particular set of facts: (1) whether the defendant occupied a position of trust, and (2) whether the defendant's abuse of that position of trust significantly facilitated her commission [or concealment] of the crime." *United States v. Cruz*, 317 F.3d 763, 766 (7th Cir. 2003). District courts need not be overly formal when determining whether a given position is one of trust;

rather, they should look beyond labels, to the nature of the position the defendant is in and the responsibilities entrusted to him. *United States v. Snook*, 366 F.3d 439, 445 (7th Cir. 2004); *United States v. Mabrook*, 301 F.3d 503, 510 (7th Cir. 2002) (citing *United States v. Davuluri*, 239 F.3d 902, 908 (7th Cir. 2001)).

Fife incorrectly argues that because his crime is tax evasion, and the United States government is the direct victim of his crime, the abuse of position of trust enhancement is only proper if it was the United States that placed him in a position of trust. This interpretation is too narrow. The city of East Chicago and its people were also victims of Fife's fraudulent scheme. He used the position they placed him in to funnel public funds to himself and his shell corporations for personal use, making those funds unavailable for other lawful purposes. *See United States v. Bhagavan*, 116 F.3d 189, 193 (7th Cir. 1997) ("The fallacy in these arguments is the notion that there can be only one victim of a tax evasion scheme—the United States—and thus that the § 3B1.3 enhancement can never apply in tax evasion cases.") (citing *United States v. Stewart*, 33 F.3d 764, 769 (7th Cir. 1994)).

Fife did indeed occupy a position of trust given the broad discretion he had in consulting for, and representing the city. He abused this position by causing the city to pay his corporations for work which the city was already paying him. Finally, Fife's abuse of his position as special assistant to the mayor significantly aided him in committing and concealing his tax evasion by diverting funds to his shell corporations. The district court did not err in its interpretation or application of the Sentencing Guidelines, nor did it clearly err in its factual findings. The two-point enhancement for the abuse of a position of trust was proper.

*B. Sophisticated Means*

Under the Sentencing Guidelines, a two-point increase in offense level is indicated for tax crimes "[i]f the offense involved sophisticated means." U.S.S.G. § 2T1.1(b)(2). Sophisticated means are those which are more complex than those involved in the run-of-the-mill tax evasion case. *United States v. Furkin*, 119 F.3d 1276, 1284 (7th Cir. 1997). The Guidelines specifically include the use of corporate shells in an exemplary list of sophisticated means. U.S.S.G. § 2T1.1 cmt. n.4. *See also United States v. Newell*, 239 F.3d 917, 921 (7th Cir. 2001). Fife and Krahn contend that their scheme cannot possibly be considered "sophisticated". Corporations are necessarily issued Federal ID Numbers which are assigned by the IRS, thereby putting the IRS on notice that tax returns should be expected from the entity. The argument goes that if Fife and Krahn intended to conceal taxable income, creating corporations with Federal ID numbers would be the "dumbest" thing they could do. This argument confuses "sophisticated" for "intelligent". The sophisticated means enhancement does not require a brilliant scheme, just one that displays a greater level of planning or concealment than the usual tax evasion case. *United States v. Kontny*, 238 F.3d 815, 821 (7th Cir. 2001) ("In light of its purpose and context, we think 'sophistication' must refer not to the elegance, the 'class,' the 'style' of the defrauder—the degree to which he approximates Cary Grant—but to the presence of efforts at concealment that go beyond . . . the concealment inherent in tax fraud."); *United States v. Minneman*, 143 F.3d 274, 283 (7th Cir. 1998); *United States v. Madoch*, 108 F.3d 761, 766 (7th Cir. 1997).

Fife and Krahn obtained payments from East Chicago by exploiting Fife's position with the city; they created corporate shells through nominee ownership and funneled payments through these shells to conceal such payment;

they failed to disclose the existence of the corporations to their own accountants until the firm was served with a subpoena for accounting journals, at which point they submitted incomplete banking records to recreate corporate activities that it appears never existed. The district court properly applied the Sentencing Guidelines and found that Fife and Krahn used sophisticated means in the commission and concealment of their offenses. We find no clear error in that determination.

### III. CONCLUSION

For the foregoing reasons, the sentences imposed by the district court on James Fife and Karen Krahn are AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*