In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1911

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PATRICK ALLAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 05 CR 927—**John F. Grady**, *Judge.*

ARGUED NOVEMBER 8, 2007—DECIDED JANUARY 18, 2008

Before EASTERBROOK, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Patrick Allan pled guilty to one count of mail fraud, *see* 18 U.S.C. § 1341, and was sentenced to 41 months' imprisonment. On appeal he challenges his sentence, which the district court calculated after increasing his offense level because he employed "sophisticated means" when perpetrating the fraud. *See* U.S.S.G. § 2B1.1(b)(9)(C). We affirm the sentence imposed by the district court.

## I. HISTORY

In order to promote sales of its products, computer giant Hewlitt-Packard ("HP") implemented an "Influencer Program," which paid out commissions to HP "referral partners"—individuals and companies that sold HP computers to third-party buyers. After each referred sale, the buyer would return a form to HP that indicated the name of the referral partner, as well as the buyer's name and contact information. Once HP received this form, it would mail a check to the listed referral partner.

In early 2004, Allan enrolled as a referral partner in the Influencer Program, doing business as "Allanent." At the same time, Allan developed an employee contact at HP. This insider contact provided Allan with the names of customers from large institutions, such as hospitals and universities, who had purchased large quantities of computers without the use of a referral partner. Allan, in turn, faxed falsified forms to HP that listed "Allanent" as the referral partner for these purchases. Allan also fabricated identities, e-mail addresses, and telephone numbers, which he listed on the forms so that any effort to verify the phony purchasers would be routed back to him.

To further this scheme, Allan created e-mail addresses and telephone numbers that would appear sufficiently genuine to deceive HP. For example, Allan disguised a fictitious buyer for the University of Massachusetts—which uses e-mail addresses ending in "umass.edu"—by listing a counterfeit e-mail address that ended in "umass.org." Allan also altered the headers on facsimile transmissions so they would appear to have originated with the actual HP buyers, and forged signatures on the forms for his invented purchasers. Between April 2004 and January 2005, Allan utilized this chimerical scheme to claim nearly $547,000 in referral commissions from

HP, and received checks from HP for approximately $484,000.

In early 2005, HP noticed that Allan had received an unusually large number of commissions, and decided to conduct an audit of his sales. HP's investigation revealed that neither Allan nor Allanent were responsible for any of the sales that Allan claimed in the forms. In January 2005, HP terminated Allanent as a referral partner and sent him a letter that demanded he return the monies HP had paid to him. But Allan had already squandered his illicit gains, and a few months later, Allan re-enrolled in the HP Influencer Program, this time doing business as "Central Computers." In May 2005, Allan employed the same apparatus he had used as Allanent to claim over $35,000 in fraudulent commissions for Central Computers. HP paid the full amount to Allan, even though, again, Allan had not actually influenced the HP sales. HP once again discovered this, terminated Allan as a referral partner, and then reported his conduct to the government.

In November 2005, a grand jury indicted Allan on two counts of mail fraud in violation of 18 U.S.C. § 1341. Eventually, Allan agreed to plead guilty to one count of violating § 1341. After Allan pled guilty, the probation officer prepared a presentence investigation report (PSR),[1] in which he computed Allan's base offense level at 7 because § 1341 carries a statutory maximum term of imprisonment of 20 years. *See* U.S.S.G. § 2B1.1(a)(1). To this, the probation officer added 14 levels based on Allan's intended pecuniary harm to HP ($582,263). *See id.* § 2B1.1(b)(1)(H). However, the probation officer did not

---

[1] The 2006 edition of the United States Sentencing Guidelines Manual was used in calculating both the PSR and sentence in this case.

adjust Allan's offense level upward because of the "sophisticated means" Allan employed to perpetuate his fraud—in the officer's view, Allan's behavior constituted "mere dishonesty" and not sophisticated means. *See id.* § 2B1.1(b)(9)(C). The probation officer then subtracted a total of three levels because Allan had accepted responsibility for his actions: two levels were deducted because Allan entered a plea agreement and ultimately pled guilty, and one additional level was deducted upon a motion by the government because Allan's plea was timely. *See id.* § 3E1.1. These calculations resulted in a total offense level of 18. This total offense level, when combined with Allan's Criminal History Category of I, yielded a guidelines imprisonment range of 27 to 33 months. The probation officer recommended a sentence of 27 months' imprisonment.

At Allan's sentencing hearing in April 2007, the district court discussed the PSR and recommendation with the parties, but then declined to adopt either the PSR's offense level calculation or the officer's recommended sentence. The district court decided that Allan's base offense level should be increased by two levels because Allan had created false identities and fictitious contact information, which, in the court's view, constituted sophisticated means. As a result, the court recalculated Allan's sentence using a total offense level of 20; this yielded a new guidelines range of 33 to 41 months' imprisonment. After considering the parties' arguments regarding the length of sentence to impose and the factors articulated in 18 U.S.C. § 3553(a), the district court announced that a sentence on the high-end of the guidelines range was warranted given Allan's greed and the extent of his fraud, as well as the need to promote general deterrence and respect for the law. *See Rita v. United States*, 127 S. Ct. 2456, 2468 (2007); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). Accordingly, the dis-

trict court sentenced Allan at the top of the guidelines range to 41 months' imprisonment.

## II. ANALYSIS

In this appeal, Allan challenges only the district court's application of the sophisticated means offense-level increase, *see* U.S.S.G. § 2B1.1(b)(9)(C), when calculating his guidelines imprisonment range. Allan claims that his actions exhibited "mere dishonesty" rather than sophistication, and he argues that the probation officer's recommendation supports this assertion.

We review the district court's findings of fact and applications of the Sentencing Guidelines for clear error. *United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007). "A finding of fact is clearly erroneous only if, based upon the entire record, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Gallardo*, 497 F.3d 727, 740 (7th Cir. 2007) (quoting *United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006)). And, of course, we review the district judge's sentencing findings notwithstanding any disparity between those findings and the probation officer's recommendation, which the judge remains free to reject. *See, e.g.*, *United States v. Blue*, 453 F.3d 948, 951 (7th Cir. 2006).

We do not believe that the district court clearly erred when it applied a two-level increase to Allan's offense level on the basis of his crime involving sophisticated means. Application Note 8(B) to U.S.S.G. § 2B1.1 states in full:

> Sophisticated Means Enhancement.—For purposes of subsection (b)(9)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme,

> locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

The parties concede that this note does not provide an exhaustive list of examples of sophisticated means. *See United States v. Madoch*, 108 F.3d 761, 766 (7th Cir. 1997). Rather, the note reflects that a wide range of criminal conduct might be deemed sophisticated.

In this case, Allan used fictitious business entities, "Allanent" and "Central Computers," to conceal his offense from HP, a sophisticated company. In addition, he evaded discovery for over a year by doctoring fax headers and fashioning phony e-mail addresses to resemble legitimate contact information. Moreover, after HP detected the fraud and removed Allanent from its list of referral partners, Allan perpetrated a similar scheme as Central Computers for another month.

Allan's scheme parallels conduct that we have previously deemed "sophisticated." *See United States v. Rettenberger*, 344 F.3d 702, 709 (7th Cir. 2003) (finding sophistication where defendant fooled "a skilled neurologist and 14 insurers"); *cf. Madoch*, 108 F.3d at 766 (finding sophistication under § 2T1.1(b)(2), the analog of § 2B1.1(b)(9)(C) in tax fraud cases, where defendant falsified tax forms and used false Social Security numbers); *United States v. Wu*, 81 F.3d 72, 73-74 (7th Cir. 1996) (finding sophistication under §2T1.1(b)(2) where defendant falsified business records, used false names, and provided misleading tax information). And the district court did not clearly err merely because Allan could have taken more elaborate steps to conceal his fraud. *See*

*Madoch*, 108 F.3d at 766. Therefore, in our view, Allan's conduct falls well within the range outlined by § 2B1.1(b)(9)(C). *See also Stitman*, 472 F.3d at 987 (noting the well-established rule that guidelines application notes are binding authority).

At the end of his brief, Allan offers a perfunctory challenge to the reasonableness of his sentence under *United States v. Booker*, 543 U.S. 220, 264 (2005). We presume that Allan's 41-month sentence is reasonable because it falls within the correctly calculated guidelines range of 33 to 41 months. *See Rita*, 127 S. Ct. 2456 at 2465; *United States v. Sanchez*, 507 F.3d 532, 539-40 (7th Cir. 2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). And because Allan has offered nothing to indicate that his sentence offends the § 3553(a) factors, he has failed to rebut the presumption that his Guidelines sentence is reasonable. *Mykytiuk*, 415 F.3d at 608.

### III.  CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*