In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2194

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD E. WAYLAND,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07 CR 40039—**J. Phil Gilbert**, *Judge.*

ARGUED OCTOBER 16, 2008—DECIDED DECEMBER 3, 2008

Before RIPPLE, EVANS and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* A jury found Ronald E. Wayland guilty of making false statements relating to health care matters, in violation of 18 U.S.C. §§ 1035(a)(2), 24(b). At sentencing, the district court concluded that Mr. Wayland used "sophisticated means" to perpetrate the fraud and, accordingly, applied a two-level upward adjustment to his offense level, *see* U.S.S.G. § 2B1.1(b)(9). The district court sentenced Mr. Wayland to 41 months' imprisonment; Mr. Wayland filed a timely notice of

appeal. Because the district court did not clearly err in determining that Mr. Wayland used sophisticated means to commit this fraud, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

The Illinois Department of Rehabilitation Services ("the Department") oversees a program through which Illinois residents with disabilities can use Medicaid funds to pay for the services of in-home personal assistants and thereby avoid transfer to nursing homes. Dorothy Wayland, a program participant, was essentially incapacitated. Consequently, her son Ronald Wayland, acted on her behalf under a power of attorney. In that role, Ronald Wayland defrauded the Department of more than $108,000 by claiming that a man named Cyril Sturm was serving as his mother's personal assistant.

Sturm, in fact, had died in 1983, but Mr. Wayland persuaded the Department that Sturm was caring for Dorothy Wayland. Mr. Wayland somehow obtained Sturm's social security number and submitted it, along with identification cards that he created by using a relative's photograph, to the Department. Mr. Wayland also registered a post office box in both his name and Sturm's, to which the Department sent correspondence addressed to Sturm. Mr. Wayland also opened a joint checking account into which he, and later the Department,

deposited checks payable to Sturm. The bank let Mr. Wayland establish the account because he represented that Sturm was homebound. Because the Department would pay Sturm to assist Dorothy Wayland only during those hours in which Mr. Wayland could not be at home, Mr. Wayland also submitted fraudulent documents showing that he was employed at local hospitals. Additionally, Mr. Wayland filed tax returns for Sturm because, the Government asserts, Mr. Wayland knew that the Department was withholding taxes on Sturm's behalf, and he did not want the scheme to attract the IRS' attention.

After nine years, the scheme began to unravel. The Department sent letters to Sturm and to Mr. Wayland requesting a meeting with Sturm; he never showed up. The Department pressed Mr. Wayland to document Sturm's existence and employment. In three written responses, Mr. Wayland insisted that Sturm existed and diligently was looking after Dorothy Wayland and that all of the identification submitted to the Department was genuine. These letters formed the basis of his indictment on three counts of making false statements regarding health care matters. 18 U.S.C. §§ 1035(a)(2), 24(b). A jury found Mr. Wayland guilty on each count.

## B. Sentencing

The probation officer recommended a two-level upward adjustment under U.S.S.G. § 2B1.1(b)(9)(C) for Mr. Wayland's use of sophisticated means to perpetrate the fraud. Mr. Wayland disputed that his conduct met this

standard, but the district court stated: "If this wasn't a sophisticated means of perpetrating a fraud, I don't know what is." R.95 at 71. Mr. Wayland's total offense level of 20 and criminal history category of I yielded an advisory guidelines range of 31 to 41 months' imprisonment. After considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court imposed three concurrent prison terms of 41 months.

## II

## DISCUSSION

We review for clear error a district court's finding that the defendant employed sophisticated means. *United States v. Robinson*, 538 F.3d 605, 607 (7th Cir. 2008).

The sentencing guidelines call for a two-level upward adjustment if an individual has perpetrated a fraud through sophisticated means. *See* U.S.S.G. § 2B1.1(9)(C). Application note 8 to U.S.S.G. § 2B1.1 states: "'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." The note goes on to provide several examples of such conduct, including the use of fictitious entities or corporate shells; but this list is not exhaustive and merely suggests the wide variety of criminal behavior covered by the guideline. *United States v. Allan*, 513 F.3d 712, 715 (7th Cir. 2008).

Mr. Wayland contends that fraudulently registering both a post office box and checking account, as well as filing false tax returns, are not complex or intricate actions,

and therefore, are not sophisticated. He relies on two cases from other circuits holding that sophisticated conduct did not extend to fraudulently registering a post office box, *United States v. Hance*, 501 F.3d 900, 911 (8th Cir. 2007), or to filing false tax returns, *United States v. Lewis,* 93 F.3d 1075, 1083 (2d Cir. 1996).

Offense conduct is sophisticated if it displays "a greater level of planning or concealment" than a typical fraud of that kind. *See Robinson*, 538 F.3d at 607-08 (finding defendant's use of false contact information for check counterfeiting made the scheme sophisticated); *United States v. Fife*, 471 F.3d 750, 753-54 (7th Cir. 2006) (holding that the defendants' use of detailed planning and more concealment than typical made the tax fraud sophisticated); *Hance*, 501 F.3d at 909 ("[T]he government must show that Hance's mail fraud, when viewed as a whole, was notably more intricate than that of the garden-variety mail fraud scheme."). We must decide whether Mr. Wayland's crime involved a greater level of planning or concealment than the typical health care fraud case.

Mr. Wayland's conduct was far more intricate than that in a typical health care fraud scheme. According to an agent who investigated the case, a typical fraud of this kind involves inflated claims of hours actually worked by a personal assistant. Here, the personal assistant did not exist. Mr. Wayland submitted false documents so the Department would believe that Dorothy Wayland had a personal assistant. He also fraudulently registered a joint bank account and post office box to facilitate the Government's payments and filed fraudulent tax re-

turns so that the IRS would not alert the Department. This scheme required a greater level of planning or concealment than the typical health care fraud case. It certainly was not clear error for the district court to find that Mr. Wayland's conduct was sophisticated.

Mr. Wayland also submits that, because he erred in the design and execution of his fraud, it could not have been sophisticated. He suggests that his admission that he shared an account with Sturm was foolish and that his forgeries must have been amateurish because investigators quickly were able to uncover the fraud. However, a sophisticated scheme need not exhibit intelligence or expertise. *See Fife*, 471 F.3d at 754. It does not matter that Mr. Wayland might have done a better job perpetrating and concealing the fraud. *See United States v. Madoch*, 108 F.3d 761, 766 (7th Cir. 1997) (noting that, even though "more elaborate mechanisms" of concealing fraud were possible, the defendant nevertheless used sophisticated means to perpetrate fraud). Nor does it matter that Mr. Wayland's own sloppiness or errors of judgment may have contributed to the unraveling of his scheme. *See United States v. Rettenberger*, 344 F.3d 702, 709 (7th Cir. 2003). Mr. Wayland's scheme displayed a greater level of planning and concealment than the typical health care fraud and its failings do not suggest that the district court clearly erred.

Even if Mr. Wayland's individual actions could be characterized as unsophisticated, we would follow the approach of our sister circuits and affirm Mr. Wayland's sentence on the ground that his overall scheme, which

lasted nine years and involved a series of coordinated fraudulent transactions, was complex and sophisticated. *See United States v. Jackson*, 346 F.3d 22, 25 (2d Cir. 2003) (holding that even if each step in the appellant's scheme was not elaborate, an enhancement for employing "sophisticated means" was nevertheless appropriate where "the total scheme was sophisticated in the way all the steps were linked together"); *United States v. Halloran*, 415 F.3d 940, 945 (8th Cir. 2005) (holding that an enhancement was appropriate where certain aspects of the appellant's scheme were not elaborate, but the total scheme was sophisticated); *see also Rettenberger*, 344 F.3d at 709 (affirming a finding of sophisticated means where the appellant engaged in "[c]areful execution and coordination over an extended period. . . .").

## Conclusion

For the foregoing reasons, we affirm the sentence imposed by the district court.

AFFIRMED