In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2797

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES LANDWER, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CR 712-1—**Robert M. Dow, Jr.**, *Judge*.

ARGUED MARCH 1, 2011—DECIDED APRIL 28, 2011

Before KANNE, ROVNER, and WOOD, *Circuit Judges*.

PER CURIAM. Charles Landwer, Jr. pleaded guilty to mail fraud, *see* 18 U.S.C. § 1341, and at sentencing received a two-level increase under U.S.S.G. § 2B1.1(b)(9)(C) for using "sophisticated means" to perpetrate his scheme. On appeal he challenges that increase and argues that we should narrow our interpretation of the guideline based on *Begay v. United States*, 553 U.S. 137 (2008). We affirm.

For seven years, Landwer carried out a fraud that bilked at least 17 victims out of more than $2 million. Acting on his own and through two financial companies, he scammed his victims—usually elderly or financially distressed—by posing alternatively as a lawyer, licensed real-estate agent, or certified public accountant; ingratiating himself; and then offering to invest their money or help them escape debt or foreclosure. He convinced some victims to transfer property to him by quitclaim deed or to place property into a land trust for which he (through forged documents) designated himself the beneficiary. With others, he perpetrated a financial scam: he stole their investment funds, liquidated them, and channeled the proceeds to earlier clients as purported interest payments on their investments.

Landwer carefully masked his fraud. Along with passing off fake checks and real-estate records, he sent his clients letters from fictitious employees, reassuring them that their investments were safe. He also curried favor with respected community members—receiving referrals from a high-ranking bank official, and being accompanied by a state appellate judge at meetings with people whom he defrauded. And when state officials began investigating his operation as part of a state criminal case against him, he forged documents to cover up his transactions.

At sentencing Landwer objected to the upward adjustment for sophisticated means recommended by the presentence report. He argued that there "wasn't much behind the lies" he told, as he never created any

fake diploma or law license, and he downplayed his forgeries as easily made. The government, however, highlighted the prolonged duration of the fraud (seven years), Landwer's misrepresentation to victims about the security of their investments, his use of complex real-estate instruments, his deception of authorities through phony documents, and his association with community leaders to induce his victims' trust.

The district court rejected Landwer's arguments, applied the adjustment, and sentenced him to a within-guidelines sentence of 115 months. Landwer's individual schemes may have been simple, the court acknowledged, but his fraud as a whole was "significantly more elaborate than usual." The court ticked off Landwer's use of "forged documents, fictitious checks, fictitious correspondence, forged real estate documents, and . . . real estate instruments such as a land trust and a quitclaim deed" for his elaborate scheme that "robbed from Peter to pay Paul." The court also noted that he used many of these same documents to mislead not only public officials such as the County Recorder of Deeds, but also prosecutors, investigators, and the state-court judge presiding over his state criminal proceeding.

On appeal Landwer argues that the district court erred in finding that his fraud involved sophisticated means because it was too simple and dissimilar to the examples listed in the guidelines to qualify for the adjustment. The guidelines define sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an

offense," and provide two examples: (1) a telemarketing scheme that is split across two jurisdictions to avoid detection; or (2) a fraud that hides assets or transactions using fictitious entities, corporate shells, or offshore financial accounts. U.S.S.G. § 2B1.1, cmt. n.8(B). This definition, Landwer insists, applies only to schemes more elaborate than his fraud, which he describes as "almost comically simple."

Landwer's conduct, however, falls within our interpretation of sophisticated means. Application of the adjustment "is proper when the conduct shows a greater level of planning or concealment than a typical fraud of its kind." *United States v. Knox*, 624 F.3d 865, 871 (7th Cir. 2010) (internal quotation and citation omitted); *see United States v. Robinson*, 538 F.3d 605, 607-08 (7th Cir. 2008) (upholding adjustment when defendant covered up counterfeiting scheme by putting his phone number on fake checks to vouch for their authenticity); *United States v. Wright*, 496 F.3d 371, 378-79 (5th Cir. 2007) (upholding adjustment when defendant inflated value of buyers' assets to defraud lenders); *United States v. Halloran*, 415 F.3d 940, 945 (8th Cir. 2005) (upholding adjustment when defendant forged numerous documents and notary stamps). Here the district court characterized Landwer's fraud in avoiding detection as "significantly more elaborate than usual." And that finding is not clearly erroneous; Landwer, under the guise of operating a financial firm, oversaw for seven years an elaborate scheme in which he created phony documents to conceal fraudulent transactions from victims and authorities, used complex real-estate instruments to

scam victims out of property, liquidated clients' investment funds for his own use and channeled the proceeds in a manner that covered up his theft, and sent trumped-up letters to clients falsely reassuring them that their investments were safe.

Landwer next urges us to narrow our interpretation of sophisticated means by applying the method of statutory construction applied by the Supreme Court in *Begay*. He reads *Begay* to hold that when a defined term of a statute or guideline is accompanied by a list of examples, those examples should serve as a limitation on the definition. The sophisticated-means adjustment, he says, should similarly apply only to fraud having the same essential characteristics as the listed examples, which he describes as the "use of resources not easily available or commonly used in business transactions" or efforts to evade detection that give victims "little or no way of tracing the fraudulent conduct."

But *Begay* does not fundamentally change our analysis. As relevant here, *Begay* applied the settled principle "that a statutory list of examples of conduct that violates the statute can be a clue to the statute's intended scope." *United States v. Taylor*, 620 F.3d 812, 814 (7th Cir. 2010); *see United States v. Alderman*, 601 F.3d 949, 952 (9th Cir. 2010). Recently confronted with similar arguments regarding the guidelines' definition of "physically restrained," *see* U.S.S.G. § 1B1.1, cmt. n.1(K), we ascertained the essential character of the listed examples by looking to interpretations or factual similarities present in our past decisions. *See United States v. Black*, No. 10-1721, 2011 WL 767999, at *5 (7th Cir. Mar. 7, 2011); *Taylor*,

620 F.3d at 814. When a similar approach is applied here, Landwer's interpretation of sophisticated means— which confines the guideline's application to crimes that use uncommon resources or are nearly untraceable— appears too narrow. Our past decisions do not construe the examples as so limiting; they interpret the examples as covering any scheme that involves more planning or concealment than other frauds of the same kind. *See Knox*, 624 F.3d at 871-72; *United States v. Wayland*, 549 F.3d 526, 528 (7th Cir. 2008); *Robinson*, 538 F.3d at 607-08.

Finally, Landwer contends that the district court inappropriately double-counted his criminal activity when it applied the sophisticated-means adjustment on top of increasing his offense level for stealing more than $1 million, U.S.S.G. § 2B1.1(b)(1)(I), and for affecting more than 10 victims, *id.* § 2B1.1(b)(2)(A). But the court did not rely on the loss amount or the number of victims in applying the adjustment; it focused instead on Landwer's deliberate steps to conceal his fraud. Moreover, these guideline provisions serve different purposes. The increase for using sophisticated means deters elaborate efforts to avoid detection, while the increases for the loss amount and number of victims punish defendants for the magnitude of harm caused by their fraud. *See United States v. Diekemper*, 604 F.3d 345, 354-55 (7th Cir. 2010); *United States v. Blum*, 534 F.3d 608, 612 (7th Cir. 2008).

AFFIRMED.