In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3074

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ABBAS GHADDAR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 999—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED APRIL 25, 2012—DECIDED MAY 8, 2012

Before POSNER, SYKES, and TINDER, *Circuit Judges*.

PER CURIAM. Abbas Ghaddar failed to report to federal and state tax authorities more than $60 million in currency received by his business and funneled part of this money into foreign bank accounts. He pleaded guilty to mail fraud and impeding the administration of the Internal Revenue Code. At sentencing the district court added 2 offense levels for using "sophisticated means" in committing these crimes. *See* U.S.S.G.

§ 2B1.1(b)(10)(C) (formerly denominated as subsection (b)(9)(C)). Ghaddar challenges this increase. Because the record supports the district court's finding of sophisticated means, we affirm the judgment.

## I. Background

Ghaddar was the sole shareholder of Tobacco House, an Illinois corporation that operates tobacco stores in the Chicago suburbs. Currency sales accounted for roughly half of the revenue from these stores, and Ghaddar directed his employees to separate currency receipts from credit-card and check receipts. He used currency to pay employees and tobacco suppliers and failed to report the currency receipts on federal and state tax forms from 2002 to 2009. He also channeled a substantial portion of the currency to bank accounts he controlled in Lebanon, his homeland, where he owns property and maintains a residence. He accomplished this overseas transfer by carrying currency or cashier's checks with him when he traveled, wiring money from noncorporate accounts he controlled at stateside banks, and shifting money into the accounts of relatives and associates, who then wired it to his Lebanese accounts. In addition, on at least three occasions, Ghaddar directed his accountant to make multiple deposits of currency in amounts around $9,000 and then transfer lump sums to an account in the Channel Islands (British Crown Dependencies off the French Coast of Normandy). The account was under Ghaddar's control but not in his name; the name of the account holder is not disclosed in the record.

Ghaddar pleaded guilty to mail fraud, 18 U.S.C. § 1341, and impeding the administration of the Internal Revenue Code, 26 U.S.C. § 7212(a). At sentencing he objected to the probation officer's recommendation to apply the upward adjustment for using sophisticated means. The Chapter 2 guideline for each count of conviction calls for an upward adjustment of 2 levels for using sophisticated means. U.S.S.G. §§ 2B1.1(b)(10)(C), 2T1.1(b)(2). The two adjustments are interpreted consistently. *See United States v. Allan*, 513 F.3d 712, 716 (7th Cir. 2008). Both provisions apply to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and both guidelines include an application note identifying, as examples of conduct ordinarily warranting the increase, the concealment of assets and transactions "through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. §§ 2B1.1 cmt. n.8(B); 2T1.1 cmt. n.4. In this case the probation officer applied § 2B1.1, the guideline for mail fraud, because Ghaddar's convictions were grouped under U.S.S.G. § 3D1.2(d) (the crimes involved substantially the same harm) and the § 1341 conviction resulted in a higher offense level, *see id.* § 3D1.3(b).

In challenging the upward adjustment, Ghaddar asserted that he did not create phony corporations, use fake names to open bank accounts, or employ special technology to conceal his assets. The government countered that Ghaddar's conduct was sophisticated because he directed employees to separate out currency receipts, withheld those funds from corporate bank

accounts, and concealed the magnitude of his tobacco sales by using currency to pay suppliers and employees. Moreover, the government emphasized, Ghaddar secreted money into foreign accounts by carrying currency and cashier's checks during his travels, avoided reporting requirements by having currency destined for overseas transfer deposited in stateside accounts in multiple transactions, each below the reporting threshold (a crime called "structuring" or "smurfing," *see* 31 U.S.C. § 5324; http://en.wikipedia.org/wiki/Structuring (last visited April 25, 2012)), and concealed the origins of other transfers into his foreign accounts by "washing" the money through the bank accounts of relatives and associates.

The district court concluded that Ghaddar's conduct warranted the sophisticated-means adjustment and, after applying the adjustment, sentenced him within the guidelines range to a total of 76 months' imprisonment. The court decided that the sophistication of Ghaddar's scheme was reflected in "all the steps that he took," especially his steps to ensure that money from Tobacco House's currency receipts was not traced to the business.

## II. Discussion

On appeal Ghaddar attacks the government's rationale for labeling his conduct as sophisticated and insists that his actions were commonplace compared to other cases where the adjustment has been applied. Defense counsel asserts that paying suppliers with currency is "the

normal course of business in the retail tobacco industry," though he never submitted any evidence to support this proposition. Counsel also asserts that this court has rejected the notion that a rudimentary "cash-skimming" operation is sophisticated. As for Ghaddar's overseas transactions, counsel maintains—again without evidence—that American banks do not operate in Lebanon, that Ghaddar reported the currency he carried to customs officials at the appropriate time, that Ghaddar did not use any "fraudulent or fictitious" accounts, and that all of the money sent back to him came from family members and employees using their own names.

Although Ghaddar's arguments are ultimately unpersuasive, one of his contentions is well-taken: By itself, skimming currency receipts and using that money to pay employees and suppliers is not a particularly elaborate form of tax evasion. As we explained in *United States v. Kontny*, 238 F.3d 815, 820-21 (7th Cir. 2001), some degree of concealment "is inherent in criminal tax fraud," and situations where a shopowner simply empties the cash register and hides the day's receipts under his bed "must be distinguished from efforts over and above that concealment to prevent detection." *See United States v. Tin Yat Chin*, 371 F.3d 31, 42 (2d Cir. 2004) (suggesting that requiring customers to pay with currency is not sophisticated); *United States v. Hart*, 324 F.3d 575, 579 (8th Cir. 2003) (concluding that not recording personal income is not sophisticated). For that reason, the adjustment for sophisticated means is warranted only "'when the conduct shows a greater

level of planning or concealment than a typical fraud of its kind.' " *United States v. Green*, 648 F.3d 569, 576 (7th Cir. 2011) (quoting *United States v. Landwer*, 640 F.3d 769, 771 (7th Cir. 2011)).

But not all of Ghaddar's actions needed to be elaborate for the adjustment to apply; it is enough that, as the district court found, his actions when viewed as a whole constituted a sophisticated scheme. *See United States v. Wayland*, 549 F.3d 526, 529 (7th Cir. 2008); *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010); *United States v. Jackson*, 346 F.3d 22, 25 (2d Cir. 2003); *see also United States v. Furkin*, 119 F.3d 1276, 1284-85 (7th Cir. 1997) (concluding that using currency to purchase equipment, together with other acts, constituted sophisticated means); *United States v. Cianci*, 154 F.3d 106, 110 (3d Cir. 1998) (concluding that failure to record sales of merchandise for currency, together with other acts, constituted sophisticated means).

We review the application of the adjustment for clear error, *see Green*, 648 F.3d at 576, and there is none here. Ghaddar repeatedly channeled money into foreign bank accounts (including one account not in his name or home country), actions that ordinarily qualify as sophisticated means. *See* U.S.S.G. § 2B1.1 cmt. n.8(B); *United States v. Whitson*, 125 F.3d 1071, 1072-73, 1075 (7th Cir. 1997); *United States v. Hammes*, 3 F.3d 1081, 1083 (7th Cir. 1993). In addition, he used elaborate tactics to conceal the source of this money, including exchanging currency for cashier's checks to carry overseas, *see United States v. Clements*, 73 F.3d 1330, 1340 (5th

Cir. 1996) (upholding adjustment when defendant obscured money's source using multiple cashier's checks and wife's bank account), directing his accountant to illegally structure currency deposits, *see United States v. Gricco*, 277 F.3d 339, 360 (3d Cir. 2002) (upholding adjustment where defendant had structured currency transactions); *United States v. Middleton*, 246 F.3d 825, 848 (6th Cir. 2001) (same); *United States v. Guidry*, 199 F.3d 1150, 1158 (10th Cir. 1999) (same), and washing money through third-party bank accounts, *see United States v. Wu*, 81 F.3d 72, 73-74 (7th Cir. 1996) (upholding adjustment when defendant concealed money in relative's account); *United States v. Becker*, 965 F.2d 383, 390 (7th Cir. 1992) (same); *United States v. May*, 568 F.3d 597, 607 (6th Cir. 2009) (upholding adjustment when defendant concealed money in third-party accounts); *United States v. Clarke*, 562 F.3d 1158, 1166 (11th Cir. 2009) (same).

AFFIRMED.