NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4686

_____

UNITED STATES OF AMERICA

v.

DEVIN D. TERRY,
                            Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-12-cr-00404-002)
District Judge: Honorable John R. Padova

_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2014

Before: AMBRO, SCIRICA, and ROTH, Circuit Judges

(Opinion filed: December 11, 2014)

_____

OPINION[*]

_____

AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Devin Duane Terry pled guilty in April 2013 to one count of conspiracy, 18 U.S.C. § 371, and two counts of bank fraud, 18 U.S.C. § 1344 and 18 U.S.C. § 2. On appeal, Terry challenges the reasonableness of his sentence because of the District Court's alleged miscalculation of the applicable advisory Guidelines range. Specifically, Terry contends that the District Court erroneously enhanced his base offense level by two levels under § 2B1.1 of the U.S. Sentencing Guidelines based on its conclusion that Terry employed "sophisticated means" to commit and conceal his offense. We review for clear error the District Court's "application of the undisputed facts to the requirements for the enhancement." *United States v. Fish*, 731 F.3d 277, 279 (3d Cir. 2013). Finding none, we affirm the sentence.

## I.    Background

As a call-center representative at the Philadelphia Federal Credit Union ("PFCU"), Terry's coconspirator, Lynward R. Brown, was entrusted with access to PFCU account holders' means of identification and account information through his work computer. In July 2007, Terry and Brown conspired to use this insider information to funnel or attempt to funnel approximately $107,500 from the victims' PFCU accounts.

After Terry told Brown which accounts to access, Terry, or others directed by Terry, posed as the account holders and transferred their funds through PFCU's automated phone banking system to existing or "sham" accounts held by several "runners" recruited by Terry to aid in the scheme. The runners would then withdraw the funds from their accounts in exchange for payment in cash. While Terry dealt personally with the runners and used his personal cell phone to further the fraud, Terry told none of

2

the runners his real name. To avoid detection, the runners used accounts at multiple banks, including PFCU, M&T Bank, and Wachovia Bank. The scheme went undetected until one of the victims noticed $60,000 had gone missing from his PFCU account.

After Terry pled guilty, the probation office completed a presentence report recommending in relevant part that Terry's sentence be enhanced by two levels because "[t]he offense involved sophisticated means through, among other things, the creation of bank accounts in the names of runners to give the appearance of legitimate banking." Terry objected to this enhancement by arguing that he and Brown used no fictitious entities or individuals to obtain the stolen funds and that the fraud was easily traceable to Terry and Brown. The District Court rejected this argument, reasoning that the scheme "was a complex process with respect to execution, and there were complex steps taken with respect to concealment."

The District Court sentenced Terry to 53 months of imprisonment, five years of supervised release, $66,281.11 in restitution, and a special assessment of $300. Terry filed a timely notice of appeal.

## II. Discussion

The U.S. Sentencing Guidelines provide for a two-level sentencing enhancement when the offense "involved sophisticated means." U.S.S.G. § 2B1.1(10). Application Note 9 to § 2B1.1 defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense." U.S.S.G. § 2B1.1 n.9(B). The Note further explains that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore

3

financial accounts . . . ordinarily indicates sophisticated means." *Id.* We have held that the enhancement applies "when the conduct shows a greater level of planning or concealment than a typical fraud of its kind." *United States v. Fumo*, 655 F.3d 288, 315 (3d Cir. 2011) (quoting *United States v. Landwer*, 640 F.3d 769, 771 (7th Cir. 2011)).

Terry argues that his offense conduct was unsophisticated because he did not employ fictitious entities, corporate shells, or offshore financial accounts to execute the scheme. The Application Note's list of examples, however, is "not exhaustive and merely suggests the wide variety of criminal behavior covered by the guideline." *United States v. Wayland*, 549 F.3d 526, 528 (7th Cir. 2008). Here, Terry relied on insider information to steal victims' identities and account information, used that information to con the PCFU into transferring funds, recruited runners to conceal his and Brown's participation in the fraud, and funneled the fraudulently obtained funds through sham accounts opened at more than one bank. Further, the scheme spanned multiple jurisdictions. While some of these individual acts may have been simple to execute, the District Court did not clearly err in concluding that the execution and concealment of Terry's offense, when viewed in the aggregate, was especially complex.

Equally unavailing is Terry's argument that investigators were easily able to trace the source of the fraud because Brown used his work computer monitored by the PFCU to steal the victims' account information and because Terry transferred the funds using a cell phone registered in his own name. It makes no difference that Terry and Brown "might have done a better job perpetrating and concealing the fraud." *Id.* at 529; *see also United States v. Jennings*, 711 F.3d 1144, 1147 (9th Cir. 2013) ("[T]he fact that the

4

concealment might not have been total does not mean that there was no effort at concealment or that the method employed was not sophisticated.").  Indeed, "a sophisticated scheme need not involve intelligence or expertise."  *Wayland*, 549 F.3d at 529.  Accordingly, that Terry's "own sloppiness or errors of judgment may have contributed to the [fraud's] unraveling," *id.*, does not negate Brown and Terry's significant efforts to conceal the scheme, such as recruiting runners to receive the fraudulently obtained funds through accounts opened at multiple banks.

Accordingly, we find no clear error in the District Court's application of the enhancement and thus affirm.