In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1846

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE J. HARRIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:10-cr-00123-PPS-APR-1 — **Philip P. Simon**, *Chief Judge.*

ARGUED FEBRUARY 25, 2015 — DECIDED JULY 1, 2015

Before BAUER, FLAUM, and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.*  On May 10, 2013, defendant-appel-
lant, Willie J. Harris, was convicted of two counts of fraud and
one count of conspiracy to commit fraud with identification
documents in violation of 18 U.S.C. §§ 1028(a)(7), 1028(f),
1029(b)(2), and 1349, three counts of production and trafficking
in counterfeit devices (credit card fraud) in violation of 18
U.S.C. § 1029(a)(2), and one count of aggravated identity theft
in violation of 18 U.S.C. § 1028A. The district court sentenced

Harris to 156 months' imprisonment and ordered him to pay $299,298.67 in restitution. On appeal, Harris contends that the court erroneously denied his pretrial motion to suppress and that there was insufficient evidence to support his conviction. He also appeals his sentence, arguing that the district court erred in applying a number of sentencing enhancements and imposed an unreasonable sentence. For the reasons that follow, we affirm.

## I. BACKGROUND

From 2007 to 2010, Harris was involved in a conspiracy to commit account takeover fraud, in which he and seven co-conspirators fraudulently added themselves as authorized users on existing credit card accounts without the account holders' knowledge or permission. Once added, Harris and his co-conspirators took out cash advances, cashed convenience checks, and made fraudulent purchases with the victims' accounts. The scheme lasted three years, involved over fifty victims, and resulted in approximately $300,000 in pecuniary loss.

Harris' fraudulent transactions began in Indiana in 2007. During 2007, he added co-conspirators as authorized users of victims' credit cards. He also directed co-conspirators to draw on these accounts through cash advances and checks. Sometime amid the 2007 activity, he relocated to Atlanta, Georgia, but continued fraudulently adding users to victims' credit cards in Indiana.

On April 7, 2008, Harris and one of his co-conspirators, seventeen-year-old Darriell Watkins, attempted to obtain a $4,500 cash advance at a Chase Bank branch in Munster,

Indiana. Watkins went into the bank, while Harris waited outside in his truck. The credit card Watkins used for the advance had been issued on the account of a man named Mark Sulzman, without his authority or permission. Suspicious of the legality of the transaction, the bank alerted the Munster Police Department. Upon arrival, an officer arrested Harris and placed him in the back of a police car. Another officer searched Watkins, discovering the fraudulent credit card, a second credit card not in Watkins' name, and a slip of paper containing Sulzman's birth date, social security number, credit card numbers, address, phone number, his mother's maiden name, and his bank password. When Watkins was placed in a patrol car, she asked an officer to retrieve her personal belongings from Harris' truck—namely, a backpack, a coat, and "school stuff." The officer returned a backpack, a notebook that he found under the backpack, and a wallet to Watkins, all of which were in plain view in the truck.

Watkins and Harris were both interviewed thereafter. During her interview, Watkins explained that the backpack recovered from the truck was hers, but the notebook and wallet belonged to Harris. When asked, Harris admitted the wallet was his, but said the notebook belonged to Watkins. Because both of them disclaimed ownership, the notebook remained in police custody. The notebook contained a litany of personal information about fourteen people, including birth dates, addresses, social security numbers, credit card numbers, and security codes. A fingerprint examination revealed 48/50 prints pulled from the notebook matched Harris' prints. Eventually, both Watkins and Harris were released from custody.

In March 2009, law enforcement began investigating Harris after he was connected to $26,000 worth of suspicious transactions. The investigation continued into 2010, when local police and postal inspector Cecil Frank executed a search warrant on Harris' Atlanta apartment. They seized computers, thumb drives, and Harris himself. A second notebook containing personal information about a host of people was also discovered.

Harris was indicted on June 21, 2010. The indictment alleged a conspiracy from March 2007 to January 2010 to commit identity theft and credit card fraud. Seven co-conspirators were also indicted.[1] With the exception of one person, all of Harris' co-conspirators pleaded guilty.

Prior to trial, Harris moved to suppress the notebook found in April 2008 on the ground that his arrest at the bank was illegal, as was the removal of the notebook from his truck. The district court denied the motion on April 18, 2013, concluding that the officer had sufficient probable cause to search the vehicle under the automobile exception. The district court also found the search constitutionally permissible as incident to Watkins' arrest.

At trial, five of Harris' co-defendants testified to Harris' involvement in the scheme, describing his role as a leader. At the close of the government's case, Harris moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. With respect to the conspiracy charge, Harris argued that the

---

[1]   There were seven additional co-conspirators who were not indicted due to their status as minors.

evidence showed two conspiracies, not one; as for the substantive counts, Harris stated only that "there doesn't exist sufficient evidence to go forward on them." The district court rejected both arguments and denied the motion.

The jury found Harris guilty on all counts on May 10, 2013. Two sentencing hearings followed. At the first on February 27, 2014, the district court overruled a number of Harris' objections to Guidelines enhancements, including a sophisticated means enhancement and a relocation enhancement. The court also found that a two-level enhancement under United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 3B1.4 applied because Harris used minors to commit the offense, but elected to forego imposing it. The court next applied a three-level enhancement under U.S.S.G. § 3B1.1(b) to Harris as a manager or supervisor of the scheme. Finally, the court found that Harris obstructed justice, meriting a two-level enhancement. At the second sentencing hearing on April 4, 2014, the district court added four points to Harris' offense level because the number of victims exceeded fifty. The court also found that the total amount of loss was approximately $300,000, warranting a twelve point enhancement under U.S.S.G. § 2B1.1(b)(1)(G).

As a result of the enhancements, Harris' offense level was 32. With his criminal history category of III, the Guidelines imprisonment range was set at 151 to 188 months. The court imposed a below-Guidelines sentence of 132 months and added the mandatory two-year consecutive sentence for the aggravated identity theft count, for a total of 156 months' imprisonment.

## II.  DISCUSSION

Harris raises a number of arguments on appeal. First, he contends that the district court erred in denying his motion to suppress the notebook found on April 7, 2008. Next, Harris challenges whether sufficient evidence supports his conviction. Finally, Harris raises several challenges to his sentence. We will discuss each of his arguments in turn.

### A.  Denial of the Motion to Suppress

Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few well-established exceptions. The district court ruled that two recognized exceptions applied to the warrantless search of Harris' vehicle: the automobile exception and a search incident to arrest exception. Accordingly, the court denied Harris' motion to suppress the aforementioned notebook. Harris challenges this ruling on appeal. We review a denial of a motion to suppress *de novo* as to legal conclusions, and for clear error as to factual findings. *United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014).

Under the automobile exception, "where there is probable cause to believe that a vehicle contains contraband or evidence of a crime, law enforcement may conduct a warrantless search of the vehicle." *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009). Probable cause exists where, based on a totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Law enforcement officers may draw reasonable inferences from the facts based on their training and experience. *Zahursky*, 580 F.3d at 521. We review *de novo* the district court's conclusion regarding

probable cause. *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) (citing *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010)).

Harris contends that the automobile exception does not excuse the warrantless search of his truck because the law enforcement agent lacked probable cause to search his vehicle. Specifically, he argues there was no reasonable basis for the officer to believe there would be evidence of identity theft in Harris' truck based on Watkins' arrest. But the record establishes that probable cause to search the truck did exist. Harris' passenger, Watkins, had just been arrested and caught with multiple credit cards not in her name, as well as a slip of paper containing personal information about the name on at least one of those cards. And Watkins' means of transportation to the bank, apparently for the purpose of committing fraud with those credit cards, was Harris' truck. Under those circumstances, it was reasonable to believe that there would be further evidence of the identity fraud in the truck. *See Zahursky*, 580 F.3d at 521–22 (finding probable cause in support of automobile exception to warrantless search where it was reasonable for officers to believe defendant would leave evidence of his crime in his car). Based on these facts, we find that probable cause to search Harris' vehicle existed and the search was justified. Because the search was permissible under the automobile exception, we need not consider whether the search was permissible as incident to an arrest, the other exception relied on by the district court and contested by Harris.

Harris makes a third argument challenging the district court's denial of his motion to suppress. He argues that the

notebook is "fruit of the poisonous tree" stemming from his illegal arrest, and must be suppressed as a result. But Harris misunderstands the law. An illegal arrest does not bar the admission of evidence otherwise untainted by the constitutional violation. *United States v. Crews*, 445 U.S. 463, 471–76 (1980). In *Crews*, the Supreme Court held that even though the defendant was arrested without probable cause in violation of the Fourth Amendment, a subsequent in-court identification was admissible because it was untainted by the illegal arrest. *Id*. at 477. So, in light of *Crews*, we need not reach the issue of whether or not Harris' arrest was valid; even if Harris had been arrested without probable cause, the arrest would not bar admission of the notebook, the only evidence he wishes to suppress, found as a result of a valid automobile search.

## B.  Sufficiency of the Evidence

Harris next challenges the sufficiency of the evidence in support of his identity theft, aggravated identity theft, and credit card fraud convictions. In reviewing whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the prosecution. *United States v. Groves*, 470 F.3d 311, 323 (7th Cir. 2006). We will affirm if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt, and will overturn only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *Id*.

Harris fails to contest any specific element of any of the challenged convictions. Instead, the basis of his challenge to each conviction is the same—that the evidence supporting the convictions stemmed from biased testimony and was therefore

insufficient to support the convictions. Harris' argument fails for a simple reason—we do not weigh the evidence or reassess the credibility of witnesses on appeal, *United States v. Griffin*, 310 F.3d 1017, 1022 (7th Cir. 2002), a point of law Harris concedes. Nevertheless, Harris contends that the testimony was biased and incredible for two reasons: the testifying co-defendants were Harris' family and friends, and they avoided jail time by testifying against Harris. Harris essentially invites us to re-weigh the evidence, but, again, that is not our role. The jury remains the proper assessor of the credibility of the witnesses, not us. *See id.* Unless the testimony is incredible as a matter of law, we must uphold the verdict. *United States v. Dennis*, 115 F.3d 524, 535 (7th Cir. 1997). Here, the jury was aware of the plea agreements signed by the co-defendants and defense counsel argued the bias of the testifying witnesses in his closing statement. The jury elected to convict even when presented with these credibility issues, as it was free to do. Accordingly, the convictions stand.

### C. Sentencing Enhancement Challenges

Harris next challenges several offense level enhancements that the district court applied at sentencing. He contends that the district court erroneously applied the number of victims enhancement, the manager or supervisor enhancement, and sophisticated means or relocation enhancement. As a result, he seeks remand and resentencing.

### 1. Number of Victims Enhancement

The Guidelines provide for a two-level increase of a defendant's offense level if the offense involved ten or more victims, and a four-level increase if the offense involved fifty

or more victims. *See* U.S.S.G. § 2B1.1(b)(2)(A)–(B). Over Harris' objection, the district court found that the total number of victims was more than fifty and thus applied a four-level increase to Harris' offense level. On appeal, Harris contends that the district court violated the *ex post facto* clause by applying a Guidelines edition promulgated after his criminal acts. *See Peugh v. United States*, 133 S. Ct. 2072, 186 L.Ed.2d 84 (2013) (holding the *ex post facto* clause is violated when a defendant is sentenced under current Guidelines providing higher sentencing range than Guidelines in effect at the time of the offense). Although Harris challenged the number of victims enhancement as a factual matter below, this constitutional challenge is new. Because this argument is raised for the first time on appeal, we review the district court's application of the Guidelines for plain error. *See United States v. Middlebrook*, 553 F.3d 572, 577 (7th Cir. 2009) (applying plain error review where defendant's loss calculation argument on appeal was completely different from the loss calculation argument raised at sentencing). Under plain error review, the defendant must show (1) an error or defect that (2) is clear or obvious and (3) affects the defendant's substantial rights. *United States v. Butler*, 777 F.3d 382, 388 (7th Cir. 2015) (citing *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Harris argues that the 2008 Guidelines edition should have applied to his sentence and that the court erred in applying a later edition. Notably, the 2008 edition limited the definition of victims to those who suffered actual loss or bodily injury as a result of the offense. *See* U.S.S.G. § 2B1.1(b)(2), cmt. n.1 (2008). One year later, in 2009, the Guidelines Commission added Application Note 4(E), which expanded "victim" to include

"any individual whose means of identification was used unlawfully or without authority," regardless of actual monetary loss. *See id.* at U.S.S.G. § 2B1.1(b)(2), cmt. n.4(E) (2009). This provision remains in effect to this day.

Harris is correct that under the 2008 Guidelines, the number of victims in his case would have been less than fifty, as many did not suffer actual loss. But later versions of the Guidelines, which include the expanded "victim" definition, apply. In *United States v. Hallahan*, 756 F.3d 962 (7th Cir. 2014), we held if any of a defendant's criminal conduct occurred after a revised edition of the Guidelines becomes effective, that edition applies to all of the defendant's offenses without violating the *ex post facto* clause. *Id*. at 979. Harris' conduct spanned from 2007 to 2010, easily encompassing the 2009 addition of Application Note 4(E). Therefore, the district court correctly counted as victims individuals whose identification was used without authority, in addition to those who suffered actual monetary loss. The district court did not plainly err in applying a four-level victim enhancement pursuant to U.S.S.G. § 2B1.1(b)(2).

### 2. Manager or Supervisor Enhancement

The district court applied a three-level enhancement to Harris' sentence based on his role as a manager or supervisor in the identity theft conspiracy. The enhancement is appropriate for a defendant who acts as "a manager or supervisor … and the criminal activity involved five or more participants." U.S.S.G. § 3B1.1(b). Harris objected to the enhancement, so we review the district court's factual determinations for clear error, *United States v. Walsh*, 723 F.3d 802, 807 (7th Cir. 2013);

whether those facts support an enhancement is reviewed *de novo*, *United States v. Pabey*, 664 F.3d 1084, 1094 (7th Cir. 2011). We reverse a district court's application of a Guidelines enhancement only if we are left with a "definite and firm conviction that a mistake has been made." *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007).

In deciding to apply the enhancement, the district court credited testimony from Harris' co-defendants. Each testified that Harris recruited them into the scheme and that they took their instruction and direction from him. They also testified that Harris would accompany them to the Bureau of Motor vehicles to help them obtain the fraudulent identification, which was corroborated by videotape on at least one occasion. Additionally, Harris made travel arrangements for the co-conspirators in furtherance of the fraud on multiple occasions. On these facts, the district court had sufficient factual basis to apply the manager or supervisor enhancement and did not err in doing so.

### 3. Sophisticated Means and Relocation Enhancement

The sophisticated means enhancement and the relocation enhancement are both found in U.S.S.G. § 2B1.1(b)(9) (2010). That provision of the Guidelines provides that if the conduct at issue involved sophisticated means *or* relocation, a two-level enhancement applies. U.S.S.G. § 2B1.1(b)(9)(A) and (C) (2010). The district court found that Harris' conduct involved both sophisticated means and relocation; accordingly, the court applied U.S.S.G. § 2B1.1(b)(9)'s two-level enhancement to Harris' sentence. Again, we review the district court's factual determinations for clear error because Harris raised this

objection at sentencing, and we review whether those facts support an enhancement *de novo*. *Pabey*, 664 F.3d at 1094. We will review the district court's reasoning as to each ground separately.

Application Note 8(B) to U.S.S.G. § 2B1.1 states that a scheme employs "sophisticated means" if it involves "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1(b), cmt. n.8(B) (2010). The enhancement is warranted when the defendant's offense, viewed as a whole, shows a greater level of planning or concealment than typical fraud of its kind. *United States v. Ghaddar*, 678 F.3d 600, 602 (7th Cir. 2012) (per curiam).

Harris contends that the enhancement was not warranted because his scheme was amateur in that he kept victims' information in notebooks, he and co-conspirators were caught multiple times, and he had fraudulent credit cards sent to his home. But the district court found that Harris used multiple aliases, obtained false state identification cards in two states to support those aliases, and then used those aliases to obtain fraudulent cards on victims' accounts. The district court also found that the scheme lasted three years and involved numerous victims. *See, e.g., United v. Anobah*, 734 F.3d 733, 739 (7th Cir. 2013) (affirming application of sophisticated means enhancement where scheme spread over two states, used false documents, false loan applications, and false documents to support the misinformation contained in the loan applications). Furthermore, it is irrelevant that Harris might have done a better job concealing his fraud; in determining the applicability of the sophisticated means enhancement, it does not

"matter that [Harris's] own sloppiness or errors of judgment may have contributed to the unraveling of his scheme." *United States v. Wayland*, 549 F.3d 526, 529 (7th Cir. 2008). Rather, the level of planning or concealment in relation to typical fraud of its kind is determinative. *See Ghaddar*, 678 F.3d at 602. Based on the facts presented, the district court did not clearly err in applying the sophisticated means enhancement.

The district court also found that Harris relocated his scheme to another jurisdiction to evade law enforcement within the meaning of the Guidelines. *See* U.S.S.G. § 2B1.1(b)(9)(A) (2010) ("If … the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement … increase [the defendant's offense level] by **2** levels."). The evidence at trial established that Harris initiated the scheme in Indiana and eventually expanded to at least Georgia. The court credited trial testimony suggesting Harris left Indiana for Georgia to escape the scrutiny he was under by law enforcement; an investigator testified that upon being served a warrant for the search of his Atlanta apartment, Harris said, "I left Indiana. What else did you want me to do?," indicating a desire to evade investigation. Once in Georgia, the scheme marched on in the same manner as before, even involving the same co-conspirators. Indeed, several co-defendants testified to that effect, describing how Harris would fly them down to Georgia in order to participate in the scheme. In sum, there was a sufficient factual basis for the district court to impose the relocation enhancement. Because there was sufficient factual basis for U.S.S.G. § 2B1.1(b)(9)'s two-level enhancement under either the sophisticated means rationale or the relocation

rationale, the district court did not err in applying the enhancement to Harris' sentence.

### D. Unreasonable Sentence Challenge

Finally, Harris challenges his below-Guidelines sentence as unreasonable. We review the reasonableness of a sentence for an abuse of discretion, *United States v. Turner*, 569 F.3d 637, 640 (7th Cir. 2009), and note that a below-Guidelines sentence is "presumptively reasonable against an attack by a defendant claiming that the sentence is too high." *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008).

To rebut that presumption, Harris contends that his below-Guidelines sentence was unreasonable given the disparities between his sentence and those of his co-defendants, who received no jail time. Section 3353 instructs a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Harris argues that his sentence violates this instruction. But, "a sentencing *difference* is not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) (emphasis in original). Here, the mere differences between Harris' sentence and his co-defendants' sentences do not amount to an improper disparity. For Harris, the district court initially calculated a final Guidelines range of 151 to 188 months, but imposed a below-Guidelines sentence of 132 months. Combined with the mandatory two years for the aggravated identity theft, Harris was sentenced to a total of 156 months' imprisonment. Unlike Harris, his co-defendants

received no jail time. But his co-defendants all cooperated with the government, offering testimony about the scheme at trial and against Harris. Such cooperation is typically rewarded with lesser sentences, and results in a warranted disparity in sentencing. *See United States v. Gonzalez*, 765 F.3d 732, 739–70 (7th Cir. 2014); *Boscarino*, 437 F.3d at 638.

In addition to the effect of the co-defendants' cooperation, the facts of the case support a different sentence for Harris. Harris was the ringleader in the scheme and initiated the illegal activity; by comparison, his co-defendants merely followed his direction. Harris has failed to rebut the presumption of reasonableness and the district court did not abuse its discretion in imposing Harris' sentence.

## III. CONCLUSION

For the aforementioned reasons, we AFFIRM Harris' convictions and sentence.