NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 22, 2016[*]
Decided July 22, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1627

| | |
|---|---|
| PIERRE JAMES, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 11-1083-SCW |
| | |
| KEVIN CARTWRIGHT, et al., | Stephen C. Williams, |
| *Defendants-Appellees.* | *Magistrate Judge.* |

**O R D E R**

Pierre James, an Illinois prisoner, sued a number of Department of Corrections employees under 42 U.S.C. § 1983. At screening, *see* 28 U.S.C. § 1915A, the district court dismissed all but a single claim that seven members of a tactical team at Menard Correctional Center used excessive force in removing James from his cell. Those defendants prevailed at trial. James appeals on a number of grounds relating to the

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

screening of his complaint, the handling of discovery, and the jury charge. We reject his contentions and affirm the judgment.

In his complaint, James alleged that members of the tactical team beat and doused him with pepper spray during a cell extraction after he tried to organize a "peaceful" hunger strike to protest a prison-wide suspension of yard privileges. He further alleged that the tactical team prevented him from obtaining immediate medical care (though they took him to shower immediately after exposing him to pepper spray), wrote a disciplinary report, and placed him in segregation. James claimed that these actions were taken in retaliation for exercising his First Amendment rights, and that the tactical team's alleged interference in his medical care constituted deliberate indifference under the Eighth Amendment. Finally, he complained that the prison's warden, the members of the administrative review board, and a grievance officer had violated his right to due process by not responding to grievances he filed.

At screening the district court concluded that James had stated only one claim: that the seven members of the tactical team used excessive force in removing him from his cell. The court dismissed the remaining claims and defendants and referred the case to a magistrate judge for pretrial matters. James proceeded through discovery pro se (his many motions for recruitment of counsel were denied), but after the defendants asserted that a video of the extraction had been lost, the judge recruited counsel to represent James at trial. The video, which had been recorded by a member of the tactical team using a handheld camera, apparently never was logged or delivered to the storage vault, despite an administrative directive requiring that tactical teams record every cell extraction. Discovery was reopened, and James's lawyer deposed the defendants about the location of the video recording. Counsel also moved for an instruction telling the jurors that they must or, at least could, infer that the recording was not produced in discovery because it would have been detrimental to the defendants' case. The case proceeded to trial before the magistrate judge, now presiding by consent, *see* 28 U.S.C. § 636(c), and at the close of evidence, the court granted judgment as a matter of law to the camera man and one other member of the tactical team because James had not introduced evidence that those two used any force. *See* FED. R. CIV. P. 50. The court, addressing the missing video recording, gave a "permissive" instruction allowing the jurors to draw an adverse inference against Kevin Cartwright (who shared responsibility with the camera man to ensure that the recording was given to the shift commander after the extraction) but only if they found that he destroyed the recording intentionally and in bad faith. The jury then found for Cartwright and the other remaining defendants.

On appeal, James contends that the district court erred by dismissing two of his other claims at screening, declining to sanction the members of the tactical team for not producing the video recording, refusing to instruct the jury that the missing recording would have been detrimental to all of those defendants, and waiting too long to recruit counsel. As an initial matter, the defendants ask us to strike James's brief because it lacks citations to the record or legal authority. *See* FED. R. APP. P. 28(a)(8)(A). True, James's opening brief includes few references to the record and none to the law, but we construe pro se submissions liberally and will review discernible arguments. *See Haxhiu v. Mukasey*, 519 F.3d 685, 691 (7th Cir. 2008); *United States v. Morris*, 259 F.3d 894, 898–99 (7th Cir. 2001). The defendants were able to understand and answer James's brief, so we see no reason to strike it.

James first argues that the district court should not have dismissed his other claims at screening, and that his recruited lawyer should have amended his complaint. Although James speaks generally about other *claims*, his discussion is limited to one claim accusing the tactical team of deliberate indifference to a serious medical need, and a second, ambiguous claim against Major Joseph Durham, the team's commander. The tactical team should have taken him to the infirmary, says James, but to state a claim for deliberate indifference under the Eighth Amendment, he needed to allege that he suffered from an objectively serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Townsend v. Cooper*, 759 F.3d 678, 688–89 (7th Cir. 2014). But James described his injuries from the cell extraction as minor cuts and bruises, which are not "objectively serious." *See Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (concluding that split lip and swollen cheek were not objectively serious); *Davis v. Jones*, 936 F.2d 971, 972–73 (7th Cir. 1991) (same, for one-inch cut and scraped elbow). So there was no error in dismissing that claim. Nor was there reversible error in dismissing the claim against Major Durham. The district court understood James to allege that Durham should have forced prison administrators to favorably address his grievances about the cell extraction, but in his reply brief James clarifies that he sued Durham for encouraging the members of the tactical team to beat him. Though that characterization puts the dismissal of the claim against Durham in a different light, a correct understanding of the claim ultimately would have been irrelevant, since the jury exonerated every one of Durham's subordinates who used any degree of force against James. *See Greeno v. Daley*, 414 F.3d 645, 656–57 (7th Cir. 2005); *Stanciel v. Gramley*, 267 F.3d 575, 580 (7th Cir. 2001).

James also contends that counsel should have been recruited earlier in the litigation. James asked several times for a lawyer, but the magistrate judge declined until it became clear that the video recording of the cell extraction would not be produced and

that the case would go to trial. James argues that with earlier help from counsel he would have established that the defendants withheld and eventually destroyed the recording in bad faith, but he does not explain what more counsel could have done.

Courts have discretion to recruit counsel in civil litigation, 28 U.S.C. § 1915(e)(1), if the factual and legal complexity of the case exceeds a pro se plaintiff's "capacity as a layperson to coherently present it." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). We will overturn a ruling on a request for counsel only if the court abused its discretion and the plaintiff was prejudiced as a result. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013). Here, the court found that James initially appeared competent to litigate his case because his clear, well-organized submissions demonstrated that his literacy and communication skills were "up to the task of prosecuting this case." The court also found that the issues were not complex, and that the outcome likely would turn on statements from lay witnesses. More importantly, when the evidentiary issues in the case intensified after the disappearance of the video recording, the court *did* recruit counsel and reopened discovery. Counsel deposed all prison employees involved in handling the recording, successfully requested a jury instruction permitting an adverse inference because of its unexplained disappearance, introduced evidence at trial about the procedures at Menard for making and preserving videos of cell extractions, and asked the jury to consider the suspicious disappearance of this particular recording as evidence of bad faith. We do not perceive any abuse of the court's discretion, and even if we did, James could not prevail because he hasn't demonstrated that he was prejudiced by the delay in recruiting counsel.

James next argues that the district court erred in responding to the nonproduction of the video recording. He begins by stating that the court was wrong to conclude that the defendants had not destroyed the video in bad faith. But James misunderstands the court's ruling. In denying his motion to compel production of the recording, the court did not make any finding about bad faith. Rather, the court found that James lacked evidence suggesting that the recording still existed or that the defendants had destroyed it.

Finally, because James insists that the tactical team acted in bad faith, he argues that the court should have applied one or the other of two remedies. First, James contends, the court could have sanctioned the defendants by entering a default judgment against them. But entering a default judgment "is strong medicine for discovery abuse," and that drastic sanction would never be appropriate without concrete evidence of delay or contumacious conduct. *Domanus v. Lewicki*, 742 F.3d 290,

301 (7th Cir. 2014); *see Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003). Moreover, a party "cannot be sanctioned for failure to comply with discovery orders if compliance is impossible." *Domanus*, 742 F.3d at 301. Here, the district court concluded that James lacked evidence that the video still existed, so the court could not have abused its discretion by refusing to sanction the defendants for not producing it. Alternatively, says James, the court should have given as to Cartwright his proposed instruction mandating an inference:

> The Court has considered the issue and has determined that the loss or destruction of the videotape was done by Defendants for the purpose of hiding information adverse to Defendants. Accordingly, you must assume that the content of the videotape would have been unfavorable to Defendants.

Rather than giving that instruction, the court told the jury that it *could* weigh the missing video against Cartwright *if* it found that he intentionally had caused the video to be lost or destroyed *and* if he had done so in bad faith. That choice by the district court was not an abuse of discretion. *See Bracey v. Grondin*, 712 F.3d 1012, 1018–19 (7th Cir. 2013) (concluding that trial judge did not abuse discretion in declining to instruct jury to draw adverse inference since plaintiff inmate lacked evidence that defendant prison guards had destroyed video of altercation for purposes of hiding its contents). Moreover, if James is asserting that the jury should have found that the defendants intentionally and in bad faith destroyed the video, it is not our role to weigh the evidence or reevaluate the credibility of witnesses. *See United States v. Harris*, 791 F.3d 772, 779 (7th Cir. 2015); *Whitehead v. Bond*, 680 F.3d 919, 928–29 (7th Cir. 2012).

AFFIRMED.