[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13937
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20259-CMA-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONET BLANC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 5, 2017)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, defendant Ronet Blanc appeals his total 94-month sentence for: (1) conspiracy to commit unauthorized access device fraud and to possess with intent to defraud fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2), (a)(3), and (b)(2) (Count 1); (2) trafficking and using counterfeit access devices with intent to defraud, in violation of 18 U.S.C. § 1029(a)(2) and 2 (Count 2); and (3) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and 2 (Count 4).  After review, we affirm defendant Blanc's sentence.

## I.  BACKGROUND

### A.     Offense Conduct

According to the undisputed facts, defendant Blanc and his brother Renet engaged in fraudulent activity involving the filing of false claims for unemployment insurance, social security benefits, and federal tax refunds.  As a result of false claims submitted by defendant Blanc, the State of Michigan Unemployment Insurance Agency deposited a total of $45,845 in the name of 12 victims into bank accounts controlled by defendant Blanc and his brother Renet.  As a result of false claims submitted by his brother Renet, the State of Michigan Unemployment Insurance Agency deposited a total of $25,724 in the name of 12 victims into bank accounts controlled by defendant Blanc and Renet.  The Florida Department of Economic Opportunity program deposited $6,294 in unemployment

2

insurance claim money in the name of 5 victims into defendant Blanc's bank account.

During a search of the brothers' shared residence, investigators found a computer in defendant Blanc's bedroom that contained an Excel spreadsheet with the personal identifying information of over 3,000 individuals, which he was not authorized to access. A search of Renet's bedroom revealed various papers, ledgers, and other documents with personal identifying information, including W-2 forms, patient records, and handwritten personal identifying information for at least 20 individuals. In total, at least 4,250 victims' personal identifying information was found during the search. The personal identifying information included names, social security numbers, and dates of birth.

The investigation also revealed that defendant Blanc and his brother accessed the online portal of the Social Security Administration and changed the bank account information of 16 elderly or disabled victims so that $11,227 in funds would be redirected into prepaid debit cards and bank accounts controlled by the brothers. Six of the victims' benefits were redirected into bank accounts controlled by defendant Blanc. The investigation also revealed that defendant Blanc and Renet used stolen personal identifying information to file fraudulent and unauthorized federal income tax returns requesting refunds; however, because the

3

investigation into the Internal Revenue Service fraud was ongoing at the time of sentencing, the specific details and loss amount were undetermined.

## B.    Sentencing

At defendant Blanc's August 31, 2015 sentencing, the district court, without objection, applied a 6-level increase in defendant Blanc's offense level, pursuant to U.S.S.G. § 2B1.1(b)(2)(C), because his offenses in Counts 1 and 2 involved 250 or more victims.  With a total offense level of 27 and a criminal history category of I, the district court calculated an advisory guidelines range of 70 to 87 months' imprisonment for Counts 1 and 2.  Although Counts 1 and 2 were grouped together for purposes of calculating the advisory guidelines range, the guidelines sentence for Count 1 became 60 months because the statutory maximum sentence for Count 1 was five years.  See 18 U.S.C. § 1029(b)(2); U.S.S.G. § 5G1.1(b).  As to Count 4, defendant Blanc was subject to a mandatory 24-month sentence to be served consecutive to any other prison term.  See 18 U.S.C. § 1028A(b)(2).

In asking for a downward variance, defendant Blanc pointed out, inter alia, his young age of 24, his lack of criminal history, and the fact that the actual loss amount of $63,000 was much less than the roughly $2 million intended loss amount used to calculate his offense level.  Defendant Blanc also submitted letters vouching for his good character and spoke on his own behalf, noting that: he attended church and had a ministry with his brother, his three-year-old daughter

4

depended upon him, he worked a full-time job, he had the support of his family, and he had learned from his mistake.

The district court stated that it had given careful consideration to the factors in 18 U.S.C. § 3553 and to defendant Blanc's history and characteristics. The district court pointed out that defendant Blanc was the older of the two brothers and profited more from the conspiracy. The district court stressed that defendant Blanc's identity theft offenses were very serious and that identity theft offenses were rampant in South Florida. The district court stated that the sentence imposed needed to deter defendant Blanc and others. The district court acknowledged that the sentence also needed to avoid unwarranted sentencing disparities, stressing that defendant Blanc was more culpable than his brother Renet. Finding that defendant Blanc was the "mastermind," the district court determined that the two brothers should not receive the same sentence.[1] As to defendant Blanc, the district court imposed a 60-month sentence on Count 1 and a 70-month sentence on Count 2, to run concurrently to each other, and a consecutive 24-month sentence on Count 4, for a total sentence of 94 months' imprisonment.[2]

---

[1]The district court had sentenced defendant Blanc's brother Renet earlier on the same day. Initially, the district court sentenced Renet to a total sentence of 94 months' imprisonment. After imposing defendant Blanc's 94-month sentence, however, the district court re-sentenced Renet to an 82-month total sentence, which included a 12-month downward variance, to reflect Renet's lesser culpability.

[2]Defendant Blanc did not file a timely appeal from the district court's August 31, 2015 judgment. The district court granted Blanc's subsequent 28 U.S.C. § 2255 motion asserting that

## II. DISCUSSION

On appeal, defendant Blanc argues that, at his August 31, 2015 sentencing, the district court "committed plain error in not considering" then-proposed Amendment 792, which, among other things, amended U.S.S.G. § 2B1.1(b)(2)'s number-of-victims enhancements.

In the 2014 version of the Sentencing Guidelines used to calculate defendant Blanc's advisory guidelines range, § 2B1.1(b)(2)(C) stated that a defendant's base offense level was to be increased by 6 levels if the offense "involved 250 or more victims." U.S.S.G. § 2B1.1(b)(2)(C) (2014). Proposed Amendment 792 struck the language above and rephrased § 2B1.1(b)(2)(C) to state that a defendant's base offense level was to be increased by 6 levels if the offense "resulted in substantial financial hardship to 25 or more victims." U.S.S.G. app. C supp., amend. 792; see also U.S.S.G. § 2B1.1(b)(2)(C) (2015). A 2-level increase remained, however, for offenses that involved 10 or more victims. U.S.S.G. § 2B1.1(b)(2)(a) (2015).[3]

---

his counsel provided ineffective assistance by failing to file a notice of appeal, dismissed Blanc's remaining claims without prejudice, and vacated and re-imposed the same total sentence. On June 21, 2016, the district court issued an amended judgment, and Blanc filed a timely appeal.

[3]Prior to Amendment 792, § 2B1.1(b)(2), referred to as the Victim Table, provided in full:

(2)  (Apply the greatest) If the offense—

    (A)  (i) involved 10 or more victims; or (ii) was committed through mass-marketing, increase by **2** levels;

    (B)  involved 50 or more victims, increase by **4** levels; or

    (C)  involved 250 or more victims, increase by **6** levels.

Both before and after Amendment 792, the term "victim" for purposes of § 2B1.1(b)(2) included not only an individual who "sustained any part of the actual loss," but also "any individual whose means of identification was used unlawfully or without authority."  See U.S.S.G. § 2B1.1, cmt. nn.1 & 4(E).

Although proposed Amendment 792 was submitted to Congress on April 30, 2015, four months before defendant Blanc's sentencing hearing, it did not become effective until November 1, 2015, two months after defendant Blanc's sentencing hearing.  See 80 Fed. Reg. 25782; U.S.S.G. app C supp., amend. 792.

Defendant Blanc concedes that the 2014 Sentencing Guidelines were "technically in effect on the date of his sentencing" but argues that the district court should have "consider[ed] and or appl[ied]" proposed Amendment 792 anyway.  According to defendant Blanc, the district court should have either continued the sentencing hearing until November 1, 2015 or varied downward to

---

U.S.S.G. § 2B1.1(b)(2) (2014).  After Amendment 792, the Victim Table provides:

(2)  (Apply the greatest) If the offense—

    (A) (i) involved 10 or more victims; (ii) was committed through mass-marketing; or (iii) resulted in substantial financial hardship to one or more victims, increase by **2** levels;

    (B) resulted in substantial financial hardship to five or more victims, increase by **4** levels, or

    (C) resulted in substantial financial hardship to 25 or more victims, increase by **6** levels.

U.S.S.G. § 2B1.1(b)(2) (2015).

7

avoid an unwarranted sentencing disparity with defendants sentenced on or after November 1, 2015.

## A.    Application of the 2014 Sentencing Guidelines

To the extent defendant Blanc challenges the district court's application of the 2014 version of § 2B1.1(b)(2)(C), we find no reversible error.[4]  As defendant Blanc concedes, a sentencing court applies the Sentencing Guidelines in effect on the date the defendant is sentenced, unless doing so would violate the Ex Post Facto Clause, in which case the sentencing court applies the manual in effect on the date the offense was committed.  See U.S.S.G. § 1B1.11(a)-(b)(1).

Likewise, in reviewing a district court's application of the guidelines, this Court applies the version of the Sentencing Guidelines in effect on the date of sentencing.  United States v. Jerchower, 631 F.3d 1181, 1184 (11th Cir. 2011).  An amendment is considered on appeal, regardless of the sentencing date, only if it is clarifying rather than substantive.  Id.  When determining whether an amendment is clarifying or substantive, this Court considers: (1) whether the amendment alters the text of the Guidelines or only the commentary, because amendments to the text generally are substantive; (2) whether the Sentencing Commission described the amendment as clarifying or whether "its statements in the amendment commentary reflect a substantive change in the punishment"; (3) whether the amendment was

---

[4]Any sentencing issue that was not raised in the district court is reviewed only for plain error.  United States v. Rodriguez, 751 F.3d 1244, 1257 (11th Cir. 2014).

8

included in the list of retroactive amendments in § 1B1.10; and (4) whether the amendment overturns circuit precedent.  Id. at 1185.

Here, considering the Jerchower factors, we conclude the changes Amendment 792 made to § 2B1.1(b)(2)(C) were substantive rather than clarifying. First, Amendment 792 not only changed the text of § 2B1.1(b)(2)(C), it completely replaced § 2B1.1(b)(2)(C), using a much lower number of victims (25), imposing a new requirement that those victims suffered "substantial financial hardship" as a result of the offense, and adding a new subsection (F) to the commentary that listed factors sentencing courts should consider when determining whether an offense resulted in substantial financial hardship to the victim.  See U.S.S.G. app. C supp., amend. 792.

Second, the "Reason for Amendment" commentary accompanying Amendment 792 suggests that it made substantive changes.  This commentary to Amendment 792 notes that the changes reflect the Sentencing Commission's "conclusion that the guideline should place greater emphasis on the extent of harm that particular victims suffer as the result of the offense" and less emphasis on "the cumulative impact of loss and the number of victims, particularly in high-loss cases."  U.S.S.G. app. C supp., amend. 792.

Third, Amendment 792 was not included in the list of retroactive amendments in § 1B1.10.  See U.S.S.G. § 1B1.10(d) (2015).

9

Finally, before Amendment 792, for the 6-level increase in § 2B1.1(b)(2)(C) to apply, the government needed to prove by a preponderance of the evidence only that the stolen identity information used in the fraud was associated with an actual person and was used unlawfully or without authority.  See e.g., United States v. Baldwin, 774 F.3d 711, 735 (11th Cir. 2014); United States v. Philidor, 717 F.3d 883, 885-86 (11th Cir 2013).  Several other circuits have explicitly held that the victims of identity theft offenses need not have suffered an economic loss to be counted under the prior version of § 2B1.1(b)(2)'s Victim Table.  See, e.g., United States v. Jesurum, 819 F.3d 667, 670-72 (2d Cir. 2016); United States v. Harris, 791 F.3d 772, 780 (7th Cir. 2015); United States v. Maxwell, 778 F.3d 719, 734 (8th Cir. 2015).  After Amendment 792, however, victims who did not suffer "substantial financial hardship" no longer count for purposes of § 2B1.1(b)(2)(C)'s 6-level increase, although they do count for purposes of § 2B1.1(b)(2)(A)(i)'s 2-level increase.  See U.S.S.G. § 2B1.1(b)(2)(A)(i), (B).

Accordingly, the changes Amendment 792 made to § 2B1.1(b)(2)(C) were substantive, not clarifying, and the district court did not err, much less plainly err, in failing to apply Amendment 792 retroactively to defendant Blanc's sentence.

Moreover, the district court was not required to continue defendant Blanc's sentencing until Amendment 792 went into effect.[5]

## B.    Substantive Reasonableness

To the extent defendant Blanc challenges the district court's refusal to vary downward, we review the substantive reasonableness of a sentence for an abuse of discretion. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).[6] In choosing the appropriate sentence, the district court must consider the 18 U.S.C. § 3553(a) sentencing factors but need not address each factor separately on the record. United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008). The weight to be given any particular factor is committed to the district court's discretion. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007). The party challenging the sentence bears the burden of showing that the sentence is unreasonable in light of the record and the § 3553(a) factors. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).[7]

---

[5]Defendant Blanc's Ex Post Facto Clause argument is without merit because application of proposed Amendment 792 at his sentencing would have decreased, not increased, Blanc's sentence. See United States v. Colon, 707 F.3d 1255, 1258-59 (11th Cir. 2013) (explaining that there is only an ex post facto problem if a new guidelines amendment increases the defendant's range of punishment above what it would have been at the time the offense was committed).

[6]Apart from the guidelines calculation error addressed above, Blanc does not argue that any procedural error occurred at his sentencing.

[7]The factors the district court must consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from future criminal conduct; (3) the

We review the substantive reasonableness of a sentence in light of the § 3553(a) factors and the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1189-91 (11th Cir. 2008). We will vacate a sentence as substantively unreasonable only upon a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. at 1191 (quotation marks omitted).

Here, the district court did not abuse its discretion in imposing a 94-month total sentence. We note at the outset that defendant Blanc does not challenge the district court's imposition of the mandatory minimum consecutive 24-month sentence on Count 4. Thus, Blanc's reasonableness challenge is to the concurrent 60-month and 70-month sentences on Counts 1 and 2, respectively. Both of these sentences were within their respective applicable guidelines ranges, 60 months for Count 1 and 70 to 87 months for Count 2, which suggests they are reasonable. See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (explaining that we ordinarily expect a sentence falling within the guidelines range to be reasonable).

The district court listened to Blanc's mitigation arguments and allocution, and stated that it had considered the § 3553(a) factors, including Blanc's history

---

kinds of sentences available; (4) the applicable guidelines range; (5) the pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to the victims. 18 U.S.C. § 3553(a).

and characteristics.  The district court also heard the government's argument that some of Blanc's victims were elderly social security recipients.  After listening to the parties, the district court found that Blanc's offenses were very serious and that there was a particular need for deterrence given that identity theft was rampant in South Florida.  The district court also stressed that Blanc's sentence should be longer than his brother Renet's sentence because Blanc, as the mastermind, was the more culpable participant in the conspiracy.

In light of these findings, we cannot say the district court abused its discretion when it declined to vary downward from the bottom of the advisory guidelines range on either Count 1 or 2.  Nor was the district court required to grant a downward variance in light of proposed Amendment 792, which was not in effect at the time of Blanc's sentencing.

**AFFIRMED.**